UNITED STATES BANKRUPTCY COURT

DISTRICT OF NEW MEXICO

In re: JAVIER LOPEZ,  No. 21-10836-j13

Debtor.

## MEMORANDUM OPINION AND ORDER DETERMINING PRECLUSIVE EFFECT OF STATE COURT DEFAULT JUDGMENT

Debtor's former spouse, Henrietta Lopez, filed two claims against the bankruptcy estate based on a state court divorce decree obtained pre-petition against the Debtor by default (the "Default Judgment"):[1] 1) Claim No. 1-3, asserting a priority claim for child support in the amount of $7,548.60; and 2) Claim No. 13-2, asserting a secured claim in the amount of $227,514.90.[2] Debtor objected to both claims. (Doc. 71).[3] Debtor and Ms. Lopez contest whether and to what extent the Default Judgment has issue and/or claim preclusive effect with respect to Ms. Lopez's claims. The Court set a briefing schedule requesting the parties to brief the following issues:

> Whether the [Default Judgment] has preclusive effect (claim preclusion, issue preclusion, or both) as to the total amount of Ms. Lopez's claim, the amounts of the components of her claim, and the character of her claim (*e.g.,* child support, alimony, or property division.).

---

[1] A copy of the Default Judgment is attached to Claim No. 13-2. Because both parties argue about the preclusive effect of the Default Judgment and neither contests the authenticity of the Default Judgment attached to Claim No. 13-2, the Court will take judicial notice of the Default Judgment for purposes of making its ruling.

[2] Ms. Lopez asserts that Claim No. 13-2 is secured because she obtained a transcript of judgment based on the Default Judgment which has been recorded in the real property records of Dona Ana County, New Mexico where the Debtor owns certain real property. Ms. Lopez argues that the secured status of her claim may obviate the need to decide the preclusion issues. *See* Brief of Henrietta Lopez (Doc. 85) (whether the state court award is in the nature of support or property division "may be idle . . . because . . . the $215,272.02 has been transcripted as a judgment lien . . . ."). The Court will confine its decision to the preclusion issues it requested the parties to brief.

[3] Debtor adopted the Chapter 13 Trustee's objection to Ms. Lopez's Claim No. 1. In response to the Chapter 13 Trustee's objection, Ms. Lopez amended her Claim No. 1 so that the total amount claimed equals the amount of the priority claim. *See* Claim 1-3 (asserting a total claim of $7,548.60 as a priority claim for child support). The Chapter 13 Trustee subsequently withdrew her objection to Claim No. 1. (Doc. 75).

Doc. 68.

Ms. Lopez contends that the Default Judgment should be given preclusive effect as to both the nature of the claims as domestic support obligations under 11 U.S.C. § 523(a)(5)[4] and as to the total amount of the claims. Debtor disagrees, pointing out that issue preclusion generally does not apply to judgments obtained by default, and arguing that claim preclusion does not apply because the nature and amount of the claims for bankruptcy purposes is not the same cause of action or the same subject matter as the claims determined by the Default Judgment.

*Issue Preclusion vs. Claim Preclusion*

A bankruptcy court may, under appropriate circumstances, apply the doctrines of both claim preclusion and issue preclusion to bar subsequent litigation in bankruptcy court of claims and issues determined in a prior final state court judgment.[5] Under the Full Faith and Credit statute, 28 U.S.C. § 1738, "a federal court must give to a state-court judgment the same preclusive effect as would have been given that judgment under the law of the State in which the judgment was rendered." *Migra v. Warren City Sch. Dist. Bd. of Educ.*, 465 U.S. 75, 81 (1984). The Default Judgment was entered by a New Mexico state district court. Thus, the Court will apply New Mexico preclusion law.

---

[4] All future references to "Code," "Section," and "§" are to the Bankruptcy Code, Title 11 of the United States Code, unless otherwise indicated.

[5] *In re Paine*, 283 B.R. 33, 39 (9th Cir. BAP 2002) ("Claim and issue preclusion apply in bankruptcy.") (citations omitted); *In re George*, 318 B.R. 729, 733 (9th Cir. BAP 2004) (acknowledging that both claim preclusion and issue preclusion apply in bankruptcy) (citations omitted), *aff'd,* 144 F. App'x 636 (9th Cir. 2005); *Sanders v. Crespin (In re Crespin)*, 551 B.R. 886 (Bankr. D.N.M. 2016) (applying both claim preclusion and issue preclusion to determine the preclusive effect of state court judgment in subsequent adversary proceeding before the bankruptcy court); *WLC Enters., Inc. v. Rylant (In re Rylant)*, 594 B.R. 783, 790 (Bankr. D.N.M. 2018) ("A final judgment from another court can have a preclusive effect in a subsequent bankruptcy case.") (citation omitted).

Under New Mexico law, claim preclusion requires satisfaction of the following elements:

> (1) . . . a final judgment in an earlier action, (2) the earlier judgment was on the merits, (3) the parties in the two suits are the same, and (4) the cause of action is the same in both suits.

*Potter v. Pierce*, 2015-NMSC-002, ¶ 10, 342 P.3d 54, 57 (citation omitted).[6]

Issue preclusion under New Mexico law requires the following:

> first, the parties in the second suit must be the same or in privity with the parties in the first suit; second, the causes of action must be different; third, the issue or fact must have been actually litigated in the first case; and fourth, the issue must have been necessarily determined in that case.

*Blea v. Sandoval*, 1988-NMCA-036, ¶ 18, 107 N.M. 554, 559, 761 P.2d 432, 437 (citation omitted).[7]

If the party asserting issue preclusion establishes these four elements, the burden shifts to the opposing party to demonstrate that he or she was not afforded a fair opportunity to litigate the issue in the earlier proceeding.[8]

A major difference between claim preclusion and issue preclusion is that under claim preclusion, a final judgment will bar subsequent litigation of not only the claims actually asserted in the first action, but also all claims arising out of the same transaction or occurrence that could have been asserted even if they were not, whereas issue preclusion only bars re-litigation of issues and facts actually litigated, but applies even if the subsequent action involves

---

[6] *See also Tunis v. Country Club Ests. Homeowners Ass'n, Inc.*, 2014-NMCA-025, ¶ 20, 318 P.3d 713, 717 ("The party asserting [claim preclusion] must satisfy the following four requirements: (1) the parties must be the same, (2) the cause of action must be the same, (3) there must have been a final decision in the first suit, and (4) the first decision must have been on the merits." (quoting *Kirby v. Guardian Life Ins. Co. of Am.*, 2010-NMSC-014, ¶ 61, 148 N.M. 106, 124, 231 P.3d 87, 105).

[7] *See also Shovelin v. Cent. New Mexico Elec. Coop., Inc.*, 1993-NMSC-015, ¶ 10, 115 N.M. 293 297, 850 P.3d 996, 1000 (the elements of issue preclusion are: "(1) the party to be estopped was a party to the prior proceeding, (2) the cause of action in the case presently before the court is different from the cause of action in the prior adjudication; (3) the issue was actually litigated in the prior adjudication, and (4) the issue was necessarily determined in the prior litigation.") (citation omitted).

[8] *Rylant*, 594 N.M. at 790 (citing *Simon v. Taylor*, 2013 WL 5934420, at *25 (D.N.M. Sept. 26, 2013)).

a different claim.[9] Thus, a state court final judgment, including a judgment obtained by default, can have claim preclusive effect because claim preclusion does not have an actual litigation requirement.[10]

However, it is well-settled that claim preclusion does not apply to non-dischargeability claims asserted in bankruptcy cases because non-dischargeability claims can only be asserted in connection with a bankruptcy case; consequently, the "same claim" requirement for application of claim preclusion cannot be satisfied. *Brown v. Felsen*, 442 U.S. 127, 138 (1979) (whether a debt is excepted from discharge is a matter within the exclusive jurisdiction of the bankruptcy court and could not have been raised in the state court action; thus, claim preclusion does not apply to bar subsequent litigation of a dischargeability claim).[11]

---

[9] *Brooks Trucking Co., Inc. v. Bull Rogers, Inc.*, 2006-NMCA-025, ¶ 10, 139 N.M. 99, 102, 128 P.2d 1076, 1079 (Claim preclusion "does not depend upon whether the claims arising out of the same transaction were actually asserted in the original action, as long as they could have been asserted." (quoting *Anaya v. City of Albuquerque*, 1996-NMCA-092, ¶ 18, 122 N.M. 326, 331, 924 P.2d 735, 740); *Blea*, 1988-NMCA-036, at ¶ 18 (one of the elements for issue preclusion is that the first and second suit assert different causes of action); *see also Park Lake Res. Ltd. Liab. Co. v. U.S. Dep't of Agric.*, 378 F.3d 1132, 1136 (10th Cir. 2004) ("Under [claim preclusion], a final judgment on the merits of an action precludes the parties or their privies from relitigating issues that were or could have been raised in that action . . . . In contrast to claim preclusion, issue preclusion bars a party from relitigating an issue once it has suffered an adverse determination on the issue, even if the issue arises when the party is pursuing or defending against a different claim.") (citations and internal quotation marks omitted); *Taylor v. Sturgell*, 553 U.S. 880, 892 ("Under the doctrine of claim preclusion, a final judgment forecloses 'successive litigation of the very same claim, whether or not relitigation of the claim raises the same issues as the earlier suit . . . . Issue preclusion, in contrast, bars 'successive litigation of an issue of law or fact actually litigated and resolved in a valid court determination essential to the prior judgment,' even if the issue recurs in the context of a different claim." (quoting *New Hampshire v. Maine*, 532 U.S. 742, 748 (2001))).

[10] *In re Sandia Resorts, Inc.*, 557 B.R. 217, 223 (Bankr. D.N.M. 2016) (citing *In re Corey*, 394 B.R. 519, 526 (10th Cir. BAP 2008), *aff'd*, 583 F.3d 1249 (10th Cir. 2009)); *The Bank of New York v. Romero*, 2016-NMCA-091, ¶ 24, 382 P.3d 991, 999 ("[I]ssue preclusion requires that the issue was actually litigated and necessarily determined in the first suit, whereas claim preclusion does not so require." (quoting *Pielhau v. State Farm Mut. Auto. Ins. Co.*, 2013-NMCA-112, ¶ 11, 314 P.3d 698, 701); *Blea*, 1988-NMCA-036 at ¶ 13 ("In New Mexico, we recognize that default judgments . . . may have res judicata [claim preclusive] effect.").

[11] *Ford v. Landon (In re In re Landon)*, Adv. No. 19-01039-M, 2020 WL 4668270, at *3 (Bankr. N.D. Okla. Aug. 11, 2020) ("Since *Brown v. Felson*, the United States Supreme Court has been clear that *liability for a debt* and the *dischargeability of a debt* are sufficiently different legal claims that claim

-4-

*The Default Judgment is not entitled to claim preclusive effect as to the nature of the claims, but has claim preclusive effect to establish the total amount of the claims*

*Nature of the Claims*

Ms. Lopez asserts that Claim No. 1-3 and Claim No. 13-2 each constitute a claim for a domestic support obligation ("DSO") under § 523(a)(5) entitled to priority under § 507(a)(1)(A). Ms. Lopez's claims are based on the Default Judgment, which awarded judgment in favor of Ms. Lopez in the following amounts:

> Judgment . . . for the sum of $7,442.00 for child support arrearages which judgment shall bear interest at the rate of 4.00% per annum from the date of entry of the judgment; and

> Judgment . . . in the total sum of $215,272.02 for reimbursement of her sole and separate property contributions to the Burke Road home, attorney's fees and taxes, and equalization of the allocation of assets and liabilities.[12]

Default Judgment, ¶¶ G and M.[13]

Mr. Lopez contends that the Default Judgment cannot have claim preclusive effect as to the nature or amount of the claim because whether such claims are DSOs is not the same claim as the claim asserted in the dissolution of marriage proceeding before the state court. This Court agrees that the Default Judgment is not entitled to claim preclusive effect as to the *nature* of the claims; however, the Default Judgment preclusively fixes the *amount* of the claims.

The Bankruptcy Code defines DSO as:

---

preclusion will not prevent a bankruptcy court from reviewing the judgment . . . in a prior state court proceeding and looking beyond them when considering the dischargeability of a debt.").
[12] Claim No. 13-2 asserts a claim of $227,514.90.
[13] The Default Judgment also awarded interest on the judgment at the rate of 8.75% per annum from the date of entry of the Default Judgment. *Id.* at ¶ N.

a debt that accrues before, on, or after the date of the order for relief in a case under this title . . . that is

- (A) owed or recoverable by-
  - (i) a spouse, former spouse, or child of the debtor . . .
- (B) in the nature of alimony, maintenance or support . . . of such spouse, former spouse, or child of the debtor . . ., **without regard to whether such debt is expressly so designated**;
- (C) established . . . on, or after the date of the order for relief in a case under this title, by reason of applicable provisions of—
  - (i) a separation agreement, divorce decree, or property settlement agreement;
  - (ii) an order of a court of record; or
  - (iii) a determination made in accordance with applicable nonbankruptcy law by a governmental unit; and
- (D) not assigned to a nongovernmental entity . . . .

§ 101(14A) (emphasis added).[14]

Thus, based on the statutory definition of DSO, the Court must look beyond the labels attributed to the obligation by the state court to determine whether the obligation is, in fact, "in the nature of . . . support" and constitutes a DSO. Consistent with the statute, Tenth Circuit law requires the Court to conduct "a dual inquiry into both the parties'[ ] intent and the substance of the obligation" to determine whether an obligation is in the nature of support.[15] *Sampson v. Sampson (In re Sampson)*, 997 F.2d 717, 723 (10th Cir. 1993). "[T]he crucial issue is whether the obligation imposed by the divorce court has the purpose *and* effect of providing support . . . ." *Id.* (quoting 2 Homer H. Clark, Jr., *The Law of Domestic Relations in the United States,* § 17.7 at 305 (2d ed. 1987) (emphasis added by *Sampson*).

---

[14] Section 523(a)(5) provides that a debt "for a domestic support obligation" is non-dischargeable. Section 507(a)(1)(A) grants first priority to domestic support obligations.
[15] The Default Judgment sheds no light on the parties' mutual intent; at most, it reflects Ms. Lopez' unilateral intent.

-6-

Granted, state courts enjoy concurrent jurisdiction to determine whether an obligation is a DSO under § 523(a)(5),[16] and state law "may provide guidance on the issue of support." *In re Busch*, 369 B.R. 614, 622 (10th Cir. BAP 2007). Even so, "[t]he bankruptcy court has the responsibility to make its own determination of the character of the obligation from the facts at hand, [and] not rely on the denomination of the obligation in the divorce decree." *Busch*, 369 B.R. at 622 (citations omitted). Whether a claim is "in the nature of support" is ultimately a question of federal bankruptcy law, not state law. *Yeates v. Yeates (In re Yeates)*, 807 F.2d 874, 877 (10th Cir. 1986) ("[T]he legislative history indicates that '[w]hat constitutes alimony, maintenance, or support, will be determined under the bankruptcy laws, not State law.'" (quoting H.R. Rep. No. 595, 95th Cong., 2ᵈ Sess. 364, *reprinted in* 1978 U.S. Code. Cong. & Ad. News 5963, 6320; S. Rep. 989, 95th Cong. 2d Sess. 79, *reprinted in* 1978 U.S. Code Cong. & Ad. News, 5787, 5865)); *see also In re Goin*, 808 F.2d 1391, 1392 (10th Cir. 1987) ("Generally, the determination of whether an obligation arising out of a divorce settlement is support is a matter of federal law, not state law.") (citation omitted). Factors relevant to the determination of whether an obligation is in the nature of support include "the relative financial circumstances of the parties at the time of the divorce," *Sampson*, 997 F.2d at 726, and "a spouse's need for support at the time of the divorce . . . ." *Id.* at n. 7.

The Default Judgment clearly designates the award of $7,442.00 as "child support arrearages" and includes a worksheet attachment that determines the amount of child support.

---

[16] *In re Brown*, Adv. No. 13-1025 J, 2019 WL 5376541, at *3 (Bankr. D.N.M. Sept. 25, 2013) ("[S]tate courts have concurrent jurisdiction with bankruptcy courts to determine whether an obligation is in the nature of support." (citing *Lewis v. Trump (In re Trump),* 309 B.R. 585, 589 n.3 (Bankr. D. Kan. 2004))); *Milford v. Milford (In re Milford)*, 281 B.R. 742, 744 (Bankr. M.D. Fla. 2020) ("[S]tate courts have concurrent jurisdiction with bankruptcy courts to determine whether ran obligation is in the nature of alimony or support for § 523(a)(5) purposes.") (citations omitted).

*See* Default Judgment, ¶¶ 35 and 36 and attached Exhibits 1–4. The Court believes that this is a strong indication that the debt for $7,442.00 qualifies as a DSO within the meaning of § 523(a)(5). However, given the Court's obligation to determine as a matter of federal bankruptcy law whether an obligation constitutes a DSO without regard to the characterization of the debt as designated in a divorce decree, it is not appropriate to apply claim preclusion to the Default Judgment to conclusively establish the nature of the debt regardless of how obvious it appears that the award labeled in the divorce decree as "child support" and computed in accordance with state law formulas likely, in fact, functions and was intended as support for a child of the debtor. *See Sampson*, 997 F.2d at 722 ("Because the label attached to an obligation does not control, an unambiguous agreement cannot end the inquiry."); *Cowell v. Hale (In re Hale)*, 289 B.R. 788, 798 n. 32 (1st Cir. BAP 2003) ("The tenor of § 523(a)(5) analysis, where labels do not hold sway and determinations are fact-intensive, counsels against bright-line pronouncements.").[17]

As for the award of $215,272.02, the Default Judgment characterizes that obligation as "reimbursement for [Ms. Lopez's] sole and separate property contributions to the Burke Road home, attorney's fees and taxes, and equalization of the allocation of assets and liabilities." Default Judgment, ¶ M. Such designation suggests property settlement, rather than support. Ms. Lopez contends that because she gave up her shelter as a result of the divorce, the $215,272.02 necessarily functions as support. The Court cannot make that determination based solely on the Default Judgment. The Default Judgment is not entitled to claim preclusive effect to establish

---

[17] *Lewis v. Trump (In re Trump)*, 309 B.R. 585, 592 n.14 (Bankr. D. Kan. 2004) ("The *Sampson* court rejected the suggestion in *Yeates* that an unambiguous agreement normally controls the court's determination."); *Dial v. Presler (In re Presler)*, 34 B.R. 895, 897 (Bankr. M.D. Tenn. 1983) ("Although the divorce decree characterizes the debts as 'alimony in solido' and 'child support,' the [bankruptcy] court is not bound by these characterizations and must ascertain the actual nature of the obligation.").

the nature of the debts because it is not apparent from the Default Judgment that the state court specifically applied the factors necessary to determine whether an obligation is, in fact, in the nature of support, constituting a DSO under § 523(a)(5). In sum, the Default Judgment did not adjudicate the same claim as the claim in Mr. Lopez's bankruptcy case that the obligations qualify as DSOs entitled to priority; therefore, the Default Judgment is not entitled to claim preclusive effect to establish the nature of the claims.

*Amount of the Claims*

The Default Judgment does, however, conclusively fix the amount of the claims under the doctrine of claim preclusion. In *Comer v. Comer (In re Comer)*, 723 F.2d 737, 740 (9th Cir. 1984), the Ninth Circuit determined that claim preclusion barred the bankruptcy court from looking behind a state court default judgment for unpaid alimony and support to determine the amount of the obligation. The default judgment conclusively established the amount of the former spouse's claim. This is consistent with this Court's prior examination of claim preclusion in the context of non-dischargeability claims. *See Crespin*, 551 B.R. at 897 (state court judgment is entitled to claim preclusive effect to establish the existence and amount of the debt, but does not establish the nature of the debt as non-dischargeable).[18] Claim preclusion applies to establish the validity and amount of a claim but not its character because a state court

---

[18] *See also Coady v. Diaz (In re Diaz)*, 580 B.R. 238, 245 (N.D. Ill. 2017) ("'Under the doctrine of res judicata [claim preclusion] . . . Debtor is not allowed to raise a collateral attack . . . as to the validity of the default judgment obtained by Plaintiff' . . . . [Q]uestions regarding the size of the debts claimed must not be revisited in a collateral attack." (quoting *In re Cunningham*, 59 B.R. 743, 746 (Bankr. N.D. Ill. 1986))); *Dosari v. McCormick (In re McCormick)*, Adv. No. 19-00313, 2020 WL 1466764, at *3 (Bankr. D. Md. March 23, 2020) ("Where a creditor previously liquidated its claim, claim preclusion applies in bankruptcy proceedings to conclusively establish the existence, amount, and validity of the claim." (citing *Crespin*, 551 B.R. at 897); *Colwell v. Lucas (In re Lucas)*, 186 B.R. 67, 69 n. 3 (Bankr. E.D. Va. 1995) ("[A] default judgment may be res judicata [claim preclusive] for other bankruptcy purposes, such as the amount of a creditor's proof of claim." (citing *Credit Alliance Corp . v. Williams*, 851 F.2d 119 (4th Cir. 1988))).

judgment adjudicates the issue of liability, *i.e.*, whether there is a valid debt and the amount of that debt. Because a determination of liability, including the existence and validity of a claim, adjudicated in a prior state court action is the same claim as the claim for payment of that debt asserted by filing a proof of claim in a subsequent bankruptcy case, claim preclusion will bar the re-litigation of the amount of that debt as established by the prior state court default judgment. Here, the Default Judgment awarding Ms. Lopez specific dollar amounts has claim preclusive effect to establish the validity, existence, and amount of those claims in Mr. Lopez's bankruptcy case.

*The Default Judgment is NOT entitled to issue preclusive effect as to the nature of the claims*[19]

Default judgments generally do not have issue preclusive effect under New Mexico law. *Blea v. Sandoval*, 1988-NMCA-036, at ¶ 13, 107 N.M. at 558, 761 P.2d at 437 ("In New Mexico, we recognize that default judgments do not have collateral estoppel [issue preclusive] effect in future litigation . . . ."); *Fogelson v. Wallace*, 2017-NMCA-089, n.2., 406 P.3d 1012, 1016 ("[C]ollateral estoppel cannot apply to a default judgment . . . ."); *Welch v. Giron (In re Giron)*, 610 B.R. 670, 676 (Bankr. D.N.M. 2019) ("Neither New Mexico nor Tenth Circuit law gives issue preclusive effect to default judgments.") (citations omitted). Default judgments do not have issue preclusive effect because issues determined by default are not actually litigated. *Blea*, 1988-NMCA-036 at ¶ 14; *Giron,* 510 B.R. at 676 ("The reason for the refusal [to give issue preclusive effect to default judgments] is that the relevant issues were not 'actually litigated.'"). The Default Judgment was entered in the state court dissolution of marriage

---

[19] Because the Court concludes that the Default Judgment is entitled to claim preclusive effect to establish the amount of the claims, the Court need not consider whether the Default Judgment has issue preclusive effect with respect to the amount of the claims.

-10-

proceedings by default. Under New Mexico issue preclusion principles, the Default Judgment should not have preclusive effect because it cannot satisfy the "actually litigated" element. *See Ideal v. Burlington Res. Oil & Gas Co. LP*, 2010-NMSC-022, ¶ 9, 148 N.M. 228, 232, 233 P.2d 362, 365 ("If any one element is not satisfied issue preclusion is not applicable.") (citations omitted).

      Ms. Lopez points out that Mr. Lopez had ample notice and opportunity to litigate the claims in the state court, but chose not to do so. She also points out that Mr. Lopez failed to respond to discovery requests. The Default Judgment recites that Mr. Lopez was served with a summons and petition for dissolution of marriage and adjudicating paternity, but did not file an answer or other responsive pleading, and was served with discovery requests but failed to respond. Default Judgment, ¶¶ 2 and 3. Despite Mr. Lopez having notice and an opportunity to litigate in the state court dissolution of marriage proceedings, it is not appropriate to give issue preclusive effect to the Default Judgment as to the nature of the claims as DSOs. *See Melnor, Inc. v. Corey (In re Corey)*, 394 B.R. 519, 527 (10th Cir. BAP 2008) (under Tenth Circuit federal law, the requirement for a "full and fair opportunity to litigate" is not applied in lieu of the "actually litigated" element for issue preclusion, but is a separate requirement), *aff'd,* 583 F.3d 1249 (10th Cir. 2009). Mr. Lopez did not participate in the state court dissolution of marriage proceedings that resulted in the entry of the Default Judgment. None of the issues decided in the Default Judgment, including whether the obligations awarded to Ms. Lopez in were intended and, in fact, function as support, were "actually litigated." Thus the Default Judgment cannot be given issue preclusive effect.

-11-
Case 21-10836-j13    Doc 99    Filed 04/19/22    Entered 04/19/22 11:02:42 Page 11 of 12

CONCLUSION

The Default Judgment is not entitled to claim preclusive effect as to the nature of the claims because the character of the debt as a DSO in Mr. Lopez's bankruptcy case is not the same claim litigated in in the state court dissolution of marriage proceeding. The Default Judgment has no issue preclusive effect because none of the issues determined by the Default Judgment were actually litigated. Claim preclusion does, however, apply to establish the validity and amount of Ms. Lopez's claims as established in the Default Judgment.

WHEREFORE, IT IS ORDERED, that the amount of Ms. Lopez's Claim No. 1-3 is $7,548.60.[20]

ORDERED FURTHER, that the amount of Ms. Lopez's Claim No. 13-2 is $227,514.90.[21]

_____
ROBERT H. JACOBVITZ
United States Bankruptcy Judge

Date entered on docket: April 19, 2022

COPY TO:

R Trey Arvizu, III
Attorney for Debtor
R. Trey Arvizu III–Attorney
715 E Idaho Ave, Ste 3f
Las Cruces, NM 88001

Tiffany M. Cornejo
Chapter 13 Trustee
625 Silver Ave SW, Suite 350
Albuquerque, NM 87102

E.P. Bud Kirk
Attorney for Henrietta Lopez
600 Sunland Park Dr.
Building Four, Ste. 400
El Paso, TX 79912-4655

---

[20] This amount includes interest on the judgment amount from the date of the Default Judgment through the petition date at the rate fixed in the Default Judgment, as computed by Ms. Lopez.

[21] This amount includes interest on the judgment amount from the date of the Default Judgment through the petition date at the rate fixed in the Default Judgment, as computed by Ms. Lopez.